May it please the court. My name is David Bridgeforth and I represent the appellants in this appeal. I would like to start by apologizing to the court in preparation for this oral argument. I noticed a couple of typographical errors in the citations page on the table of authorities of the appellant's brief. I have a corrected page here today that I can submit or I can correct those on the record if the court would prefer. However the court would like to handle that, I'm happy to handle that. If you have some corrections, submit them to the clerk afterward if you would. Thank you very much. Your Honor, this appeal involves the judicial review of an administrative interpretation issued by the Federal Crop Insurance Corporation. This review is under the Administrative Procedures Act. Under the Administrative Procedures Act, questions of law are reviewed and decided by this court de novo. The Eighth Circuit has recognized that the construction of a FSCIC crop insurance policy involves questions of law. The appellants assert that the standard review before this court is a de novo review. There are certain limitations on de novo review, known as the Judicial Deference Doctrine, and that is a critical issue in this case. Under the Judicial Deference Doctrine, in cases involving an agency's interpretation of a statute the agency is charged with administering, that interpretation is entitled to substantial deference. That was recognized by the court in Chevron. As the District Court correctly noted, though, this case does not involve the construction or interpretation of a statute. When an agency interprets its own regulations, that interpretation is entitled to substantial deference. However, as the District Court correctly noted also in the present case, this case does not involve the interpretation of a regulation. The fact that the regulations do incorporate or refer to special provisions, but only by general reference, does not make the provisions, the substantive provisions of that special provision part of the regulations, and this was correctly noted by the District Court. Following Chevron and the cases discussing judicial deference, the Supreme Court and U.S. v. Meade considered, or granted cert for the express purpose of considering the limits of judicial deference to agency interpretations, and what the Supreme Court held is that judicial deference is only, and I should say Chevron deference, the substantial deference is appropriate only when the Congress has delegated to the agency the general authority to make rules carrying the force of law and, and that is critical here, and the determination claiming deference was promulgated pursuant to such authority. In the present case, the special provisions were not promulgated regulations. While the FCIA does grant to the agency the authority to enact regulations to carry out the purposes of the FCIA, the special provisions nor the FCIA interpretation were promulgated pursuant to that authority, and for that reason, we disagree with the District Court's finding that substantial deference would be warranted. On the issue of deference, I would like to make two points. One, I believe in Skidmore, I'm sorry, in U.S. v. Meade, the court answered the question before this court, and that is what level of deference is appropriate. What the court said in U.S. v. Meade was Chevron left Skidmore intact, inapplicable where statutory circumstances indicate no intent to delegate general authority to make rules with the force of law, or such authority was not invoked. That is the exact situation that we have here. So we believe that the substantial deference doctrine of Skidmore, I'm sorry, of Chevron is inappropriate, should not be applied, and that at best, Skidmore deference would be the standard of deference to be applied. One of the arguments that the agency has made throughout this proceeding was that it would be illogical to afford Chevron deference to the basic provisions and the rice crop provisions, but not the special provisions. We would disagree with that and argue that it's entirely logical for that result. One of the basis for the decision in Meade was the fact that where the agency, where Congress contemplates administrative action with the effect of law when it provides for relatively formal administrative procedures, intending to foster the fairness and deliberation that should underlie a pronouncement of such force. So that's the whole reason why the Meade rule was adopted. It ensures where regulations or determinations are issued pursuant to authority to grant, make rules carrying the force of law, there's some insurance that the deliberation and the consideration required to justify that level of deference is there. With the special provisions and the FCIC interpretation, they are completely lacking. The FCIC interpretation was simply prepared by the agency. The agency could change it at the whim with the stroke of a pen, which is exactly what they did here. It's not that easy to revoke regulations or to adopt new regulations. You have to go through the notice and comment rulemaking procedure, which provides that safeguard, which is completely lacking here. We believe that Chevron deference does not apply, and at best, Skidmore deference would be the standard to be considered. Under Skidmore, the court is required to review the interpretation at issue. And the weight to be accorded to the interpretation depends upon thoroughness of its reasoning, the validity of its logic, the consistency with prior or subsequent determined interpretations. And based upon those factors, the court is to decide whether it's entitled to any weight at all. We would assert that the FCIC interpretation is not entitled to any weight. It does not even address the substantive or the primary issue in this appeal, and that is, does the provision require the construction of the entire levy system or only those levies required to flush the field? That's not even addressed substantively in the FCIC interpretation. They refer to a dictionary definition of the word immediately, which really has nothing to do with the extent of the levies required, which is, I say, the primary issue on appeal. So we do not believe that the FCIC interpretation, when you apply those Skidmore factors, is worthy of any deference at all. So we believe that the, and respectfully assert to the court, that the proper standard is strictly a de novo review, with no deference afforded to the administrative determination. We further believe that when read as a whole, the special provisions are fairly clear and support the interpretation that we advance, that only those levies required to flush the field are required by the special provision. The special provisions have three parts. The first references the levies. It simply says levies are surveyed. It doesn't say all levies. It doesn't say some levies. It doesn't answer that question. It simply says levies. However, the third provision under the special provisions provides that, with respect to the irrigation pumps, that they be operable and ready to be turned on and turned on to provide sufficient water for purposes of germination and the prevention of soil crusting. In other words, flushing the field. In light of the fact that the third provision, dealing with the wells, specifically is limited to flushing the field, it makes sense, in my view, that the first and the second should also be construed to apply to that level and not to require the entire system of levies, which have nothing to do with flushing the field in many cases. I understand that argument, but as I read the actual language of the special provision at issue, you're reading the conjunctive out of it and reading it in the disjunctive sense, and I'm wondering why that's appropriate. Well, I think the special provision certainly could have been drafted better in support of our position. I think it's appropriate because if, and when you look at the intent of the special provisions, and the administrative record makes pretty clear that the whole intent of the special provision was to avoid paying claims to farmers that planted rice but did not take the steps to be able to flush that field if necessary. That's the whole purpose of the special provision and why it was adopted in the first place. So when you consider that and then you look at the special provision, all three sections, and read them as a whole, and I do agree that it does say and, and it certainly could be worded better, but I think that's the reason that we would argue that it should be read in that way. However, if not, and based on what Judge Erickson, I think, is getting at, if you do not read it the way that we would propose, then I think you have to decide, is the language ambiguous? As I pointed out, with respect to the levies, all it says is that levies, levies shall be constructed and installed. It doesn't say what levies, so if that's ambiguous, we believe the court must construe that, and to do that, the court must apply the proper rules of contract construction, which we assert are those contained in the substantive law of the state of Missouri. The agency claims those laws are preempted, but if the court will look at the preemption language contained in the policy, and that appears at page 221 of the joint appendix, and as the court previously ruled in Croakland Farms General Partnership, state law applies with two exceptions. First is when the contract provides that state law does not apply. The agency is not appointed to a single provision of the policy that says state law does not apply. Secondly is if the application of state law would conflict with the terms of the policy. The agency is not appointed to a single provision of the policy that would conflict with the application of state law. State law has been applied in other cases by the federal courts. The Ninth Circuit has done that, as well as courts in Nebraska and Wisconsin, the earliest of which was in 2005. Congress did not come in and amend the FCA to preclude the application of state law, nor has the agency amended its own regulations, which it could easily do, to provide that state law does not apply. It hasn't done that, and now they want to argue preemption, even though the court has told them exactly when preemption would apply, and it does not apply here. So we would assert respectfully that the state law, substantive laws on the rules governing construction of contract are applicable, and we've covered those in the brief as to why we believe if you apply those rules of construction, the result or the interpretation that we are advancing is the proper interpretation as a matter of law. Has the special provision, have the special provisions been changed? Yes, sir, they have been changed, and I think that goes to one of the reasons why substantial deference is not appropriate, the ease with which they can be changed. The special provisions were changed, and when you read the special provisions as they are currently written, they would support very clearly the position that we're taking. And one other thing I would like to point out, that in the administrative record is a letter from the director of the RMA to Senator Roy Blunt, who made an inquiry regarding these special provisions, and what the director says is with respect to the special provisions, these provisions are based on published recommendations of the University of Missouri, the University of Arkansas, Louisiana State University, and Mississippi State University, all of which recommend constructing levees as soon as possible after planning to enable a flush irrigation. So the special provisions are based upon recommendations that are limited to the ability to flush, as opposed to the entire levee system that would be required to maintain the permanent flood on that rise. And we believe that that is further evidence, number one, of how the intent and the meaning of the original provision, but also would support the interpretation that we are advancing. The final argument, Your Honors, deals with the ability to issue a binding interpretation in this case. The FCA does not require it. The FCIA only requires an interpretation if it's of the statute or the regs, and the agency has not adopted a procedure for issuing interpretations of such special provisions. And for that reason, we do not think they have the authority to issue a binding interpretation. If they want to say what they think the provision means and provide that to the arbitrator, I suppose they're free to do that. But to do it in the form of a binding opinion that says, Arbitrator, you are bound by this interpretation, we don't think they have the authority to do that, and we would ask that that order be set aside for that reason as well. I would like to reserve the balance if there are no further questions. You may do so. Thank you. Thank you very much, Your Honor. Good morning. Ms. Shaw, you may proceed. Thank you. Good morning. May it please the Court. My name is Jane Shaw. I'm an assistant United States attorney representing APALYS, the United States Department of Agriculture, Federal Crop Insurance Corporation, and Risk Management Agency. The lower court properly applied heightened deference to the interpretation at issue and upheld it. However, before I get to that, I'd like to briefly describe for you some of the basic parties at issue and statutes and regulations at issue. Appellants are farmers in southern Missouri involved in an arbitration proceeding with their private insurance company regarding their rice crop from 2012. The private insurance company is not involved in the present litigation in federal court. The arbitration is stayed pending resolution of the matter before Your Honors. That is where the facts will be heard. The facts are not at issue here. The facts were not considered by FCIC when it issued its interpretation. The government is involved at this stage because the underlying policy of crop insurance is federally reinsured by the federal government pursuant to the Federal Crop Insurance Act, which is the statute that creates the entire large umbrella of federal crop insurance. That is the act which created the other appellees. FCIC, or Federal Crop Insurance Corporation, and RMA, Risk Management Agency. The FCIC is a federal agency of the United States Department of Agriculture created to carry out the purposes of the statute. It acts as the reinsurer for these federally reinsured crop policies. It is a relatively small entity. The larger entity is RMA. It is essentially the worker bees of managing and running federally reinsured crop insurance. It's also an agency of the United States Department of Agriculture. It is staffed by highly skilled agronomists, and it regulates and oversees the implementation of federally reinsured crop insurance. For the federal government to reinsure a crop insurance policy between a private farmer and that farmer's private insurance company, it requires a lot of things, including it dictates exactly what must be in the policy. Now, appellant policy includes three provisions. First provision is the basic provision. It is found in the codified regulations. Next is the crop-specific provision, which is, of course, rice. Next is the special provisions which pertain to rice grown in Stoddard County, Missouri for the year 2012. Special provisions are not verbatim in the regulations, and essentially that is what brings us here today. Special provisions are by definition highly specific, extremely granular, and include things as detailed as planting and reporting dates for a specific crop season in a specific year. Appellant's arguments ignore some very essential mandates found in the codified language. First, special provisions are defined in the codified language as the policy. They are defined twice as a part of the policy, under policy and under special provisions, at 7 CFR 457.8 under the definitions section. The regulations, most importantly, prioritize the special provisions over all the other provisions in appellant's policy. So, for example, if there's a conflict between the language and the rice provisions or the basic provisions and these special provisions, it is the special provisions which control. Now, that rule is also found in the regulations. The regulations mandate interpretations of the policy. When there's a dispute between insurance company and a farmer about a term, and remember they are defined as part of the policy, and the regulations mandate that that would be binding in arbitration. Now, the standard of review is obviously the largest issue before this court. The lower court properly found that the standard review should be that as articulated in our v. Robbins. An agency's interpretation of its own regulations is controlling, unless plainly erroneous or inconsistent with the regulations. Now, this court in the Rain and Hail case at 426 Fed 3rd 976, applied ours controlling regulation, the standard of review articulated in our v. Robbins, when the FCIC, the same party here, interpreted its manager's bulletin. A manager's bulletin is not a regulation. It has no force of law and it did not have formal rulemaking. However, this court wisely found that because of a police unique experience and the complex circumstances of federally reinsuring crop insurance policies, that was the appropriate standard of review. The manager's bulletin at issue in Rain and Hail is different than the special provisions, which are more important. The manager's bulletin was not a part of the policy. It was not the most important part of the policy and it wasn't as granular. Rain and Hail is the applicable standard and should be applied. Well, I asked the question about this post-2012 changes to the special provisions that are mentioned in the appellant's brief. My first question is, is that something that we can consider in this appeal? No, Your Honor, but peripherally they support our position. If they were changed, obviously they are now different from what they were before and they were changed to something else. But what is at issue here is what special provisions were in effect in 2012. So whatever rationale for changing them is not before this court. That would be the underlying facts in some other matter in some other forum. What is before this court is whether appellees were clearly erroneous in interpreting their own words, their own mandates. Well, if the terminology in the special provisions are unclear or subject to various interpretations, would these changes, couldn't it be argued that these changes clarify the meaning of the special provisions? No, Your Honor. The special provisions, first of all, I disagree with your premise that they were not clear. The special provisions at issue say the following must have occurred immediately following seating. Levees are surveyed and constructed. Levee gates are installed and butted. And then a third section on irrigation. FCIC interpreted that as stating all levees must be surveyed and constructed. All levees must be installed and butted. Plaintiff's proposition to FCIC as to what those plain words really meant added more words than in the special provision at issue and added language and conditions that made it unknowing how to manage and monitor this provision of farm insurance. Appellants ask that the special provisions be defined as They only require that such levees, levee gates, and irrigation pumps as are required to enable the producer to put sufficient water on the field in the event it is needed for the purposes of germination or the elimination of soil crusting be in place immediately following seating. Okay, let me stop you there. And that is what's now in effect. Essentially, yes. But the fact whatever went into FCIC's decision to change those is not at issue here. And the mere fact that they were changed confirms that they needed to be changed to have that definition supports our position that RMA and FCIC are charged by statute with interpreting its language. Put it this way. Under the changed provisions, would this farm operation be permitted to do what it thinks it should be permitted to do? Your Honor, I don't know. I am not a specialist in farming, and that is not what is before this court. You haven't told us yet what was the purpose of the special provision to make sure that people couldn't double crop or hedge against the failure? It is my understanding that it might have been double crop. But the issue before this court is was the standard of review appropriate? And then pursuant to the appropriate standard of review, was our interpretation plainly erroneous? And the lower court used the plain words of the statute, of the plain words, rather, of the special provision in its interpretation. The fact that a dictionary definition was used is not at all an important point because the words were so simple. RMA was not there to justify its requirement of insurance. It was there to interpret its specific words, its mandatory policy requirements and language. Well, let me ask you this. In the 2013 email that talks about the post-2012 changes, it says this. It says the statement was intended to ensure that losses were not paid if producers did not have the means to flush the acres in order to obtain an adequate stand. Now, isn't that what the appellant is arguing here, that that is exactly what this language means? But that, even getting to that argument. Am I correct or not? I don't know enough about farming to know that. And that's one of the points, is that. It would be most helpful if you did know. Indeed. I grew up on a farm in South Dakota. We don't flood. We look for more water. But there is the other aspect. Not always. Do we hear the reports about neighbors having a better luck in a wet year than in the dry and that sort of thing? Yes. Well, it sounded to me like that's what the argument was. Maybe he can clarify when he comes back up. But if we have a statement here, if we have a sentence that tells us what the statement was intended to ensure, why can't we simply go with that as clearing this up? We've got a difference of opinion as to what the special provision means. And we have wording here that tells us what the intent was. Because that email does not rise to the level of the formal interpretation. The interpretation was made pursuant to codified mandate. And who knows what assurances the person drafting that email made to confirm that that person was speaking on behalf of the federal government as far as what they intended in the special provisions. Hold on just a minute. The special provisions, as I understand them, are the policies of insurance. And it's an insuring clause. It's actually an exclusion to the insuring clause. And the question that we have in a policy of insurance, and I don't care who writes it, is the first thing you look at is what does the plain language of the policy say. And if the language is plain, the whole discussion ends. If the language is ambiguous, it's ordinarily, in the absence of Chevron deference, we would just go ahead and resolve all disputes in favor of the insured because of the nature of the take-it-or-leave-it position of an insurance policy. Now, in this case, you have the language of the special provisions, which are in fact what happens with all crop insurances at some point. The Department of Agriculture acting through the Risk Management Agency divides the nation into various divisions, oftentimes counties, sometimes regions. And then sets forth insuring policy provisions, right? Yes. All right. For contracts between farmers and their private insurance companies. Right. I mean, there is this whole private insurance thing, but in the end, it's all reinsured by the federal government. The federal government takes the terms. I mean, the private insurer is not free to just write its own policy. It's just not free to be reinsured at that point. That is correct. All right. Now, once that happens, do we really ever go back to look at what was the intent or the policies of the language unless there's that ambiguity? Once again, the premise of your question would require an analysis of contract law, and that was going to be my final section I wanted to talk about, and it looks like I'm almost out of time, so I will very quickly talk about contract law. The underlying court correctly determined the proper standard of deference but then used contract law, assuming without deciding that Missouri contract law applied, in assessing the standard of deference according to these language terms. Contract law as a whole is inapplicable because this is not a contract between appellants and appellees. There is a contract that is between appellants and their insurance company. Now, there are situations where there are contracts where the federal government is a party to the contract. Under those circumstances, the arbitrary and capricious standard applies, but that is not the situation here. This situation, there is no contract between the parties. There is no contract dispute between the parties. By mandatory regulatory language, there is no privity of contract between the parties. That is at 7 CFR 400.96. And as a result, the issue is the mandated interpretation by the federal government of its own mandatory regulations. May I briefly conclude? Yes, complete your argument very briefly. FCIC is obviously in the superior position to tell the parties what its language means. In this highly technical, complex, and specialized field of reinsuring crop insurance policies, appellees have a unique experience and they are charged by statute with these duties. The lower court used the appropriate standard of deference and should be upheld. It would go against both the intent and the language of the statute and regulations for the government not to be deferred to when it is interpreting its own words, which constitute its most important requirements to qualify for federal reinsurance. We ask that you affirm the lower court's ultimate decision but clarify that using contract law for any reason under these circumstances would be erroneous. Thank you. Very well. Mr. Bridgeforth? Mr. Bridgeforth, let me just ask you, and maybe I overstepped here in my question to counsel. What I said was that it was my understanding that your argument meshed with this statement in the email that explained the changes to the special provisions where it says that immediately following seeding was removed and then it says the statement was intended to ensure that losses were not paid if producers did not have the means to flush the acres in order to obtain an adequate stand. The modified provision clarifies this point, and I thought that was your argument, that that's what the language that we're talking about was meant to achieve or assure. Well, Your Honor, our point was primarily this. In interpreting the provision, one must consider the purpose for the provision when the purpose of the provision is known, and what that email made is clear in our opinion. And further, when you look at the letter from the director of RMA to Senator Blunt, it confirms that the purpose of that provision was exactly what it says in the email, to prevent paying claims to producers that did not have the ability to flush the field if necessary. That was the purpose of it, and it should be interpreted in accordance with that purpose. So if that answers your question, I think the answer to your question is yes. Well, am I correct that the change that's made is by removing the language immediately following seeding is that it doesn't require that levies be in place as early in the process? Well, it clarified that issue. Now, I would point out that the subsequent changes made additional. It wasn't simply a change to say that the entire levy system did not have to be constructed immediately following seeding. They made other changes, and that's in the administrative record at page 325. I'm sorry, the joint appendix at page 325. And so it refined it further than just simply saying the timing of the levies. And I would point out also that this issue with respect to the timing of the levies, the provision actually says the following events must have occurred immediately following seeding. It does not say they must occur immediately following seeding. So if they occurred before seeding, following seeding, those events would have occurred. They just occurred prior to. So I would disagree with part of that interpretation as well. I'm out of time. Again, this comes late in the argument, of course, but I'm going back to the opening part of your brief. The way the provisions were interpreted deprived your clients of what? I'm sorry? Your clients were deprived of what as a result of the interpretation that the government has put on this? What the government has done is issued an interpretation that the government asserts is binding on the arbitrator in our arbitration. So, I mean, ultimately. Ultimately, how were your clients hurt? We will be required to go to an arbitration with a binding interpretation from FCIC that says our acreage was not insurable. That interpretation would be binding on that arbitrator who basically would have no authority other than to say, I'm bound by this interpretation. Your acreage is not insurable. So, you know, goodbye. You have no claim for indemnity. This is for past crops? Oh, yes, sir. Yes, sir, completely. Going forward, I don't know. I guess we shouldn't even ask what happened going forward under the new legislation. Well, the policy has been amended now, so going forward we're operating under a different provision entirely. So we're talking about a closed period as we're? I'm sorry? We're talking about a closed? Yes, sir. Yes, sir. Yes, sir, very much so. Well, the special provisions are frequently revisited generally on crop insurance policies, right? Yes, sir, I think that they are. And if I would ask the court to look at the special provisions, yes, they do rank highest when interpreting the policy, but the policy is 40 pages long. And as I think you noted, that's where all your coverages are, all your exclusions. The meat of your policy is there. The special provisions are one page, and they deal with geographic, for the most part, issues such as planning dates and things of that nature, which are going to change geographically. The substantive provision, and I would also just quickly point out that the substantive provision with the special provision, that could have very easily been added to the rights provisions if the agency wanted it to carry the force of law and to be entitled to Chevron deference, and it was not. Very good. All right, well, we thank both sides for the argument. The case is now submitted, and we will take it under consideration. Thank you very much.